Lane *v.* Borland.

OLIVER LANE *vs.* GEORGE L. BORLAND.

Where *L.* made a bill of sale, not under seal, of a horse to *W. & F.*, warranting it free from all incumbrances, and acknowledging the receipt of payment therefor by notes, and at the same time took back from them a writing, stating that the horse was purchased by them of *L.* and was to remain his property until the notes were paid, but that *W. & F.* were to have possession of the horse until the notes became due; and *W. & F.* took possession of the horse, and before the notes were due sold him to *B.*, exhibiting his bill of sale from *L.* as evidence of his title, who was thereby induced to make the purchase, and who had no notice of any claim of *L.* The notes not being paid, *L.* demanded the horse, and on refusal to give it up, brought this action of trover. *It was held,* that *L.* was entitled to recover, either because he had *not* parted with his original title, or because he had acquired a new one by way of mortgage.

The principle, that if one of two innocent parties is to suffer loss by the fraud of a third, it shall fall on him who has reposed confidence in the fraudulent party, does not apply to cases where the mortgagor of personal property has been suffered to retain the possession.

THIS case came before the Court on a statement of facts, of which a copy follows.

This is an action of *trover,* brought to recover the value of a horse, which the plaintiff alleged to be his property, and to have been converted by the defendant, on the second day of *May,* 1834. It was agreed by the parties, that the said horse was originally the plaintiff's, and that on the fourth day of *January,* 1834, the plaintiff made the following 'agreement with the firm of *Washburn & Fling* of *Bangor,* respecting the sale of said horse to them, viz: The plaintiff agreed to sell said horse to them for the sum of eighty dollars, forty dollars and interest to be paid in *March,* 1834, and forty dollars and interest in *June,* 1834, and that the said horse should remain in the possession of the said *Washburn & Fling* until they should fail to pay according to their contract, but should continue to be the property of the plaintiff until payment should

be made according to the contract; at which time the plaintiff gave to *Washburn & Fling* a bill of sale of said horse, and took back a written acknowledgment of the terms and conditions of the agreement; the following is a copy of said bill of sale, viz:

> " *Bangor, January 4th,* 1834.

This certifies, that *Washburn & Fling* of *Bangor*, bought a bay horse of *Oliver Lane* of *St. Albans*, and the said *Lane* warrants the horse to be free from all incumbrances. The said *Lane* has received payment by notes.

> *Oliver Lane.*"

And the following is a copy of the agreement above referred to, signed at the same time, by *Washburn & Fling*, viz:

> *Bangor, January 4th,* 1834.

This certifies, that we, the firm of *Washburn & Fling*, bought a bay horse of *Oliver Lane*, of *St. Albans*, and the said horse shall remain in our hands until the said *Lane* receive his pay, then the said horse shall be our property, otherwise, shall be the property of said *Lane*, the payments become due, forty dollars in *March* and forty dollars in *June* with interest.

> *George W. Washburn,*
> *Sanford Fling.*"

And it is admitted that the plaintiff can prove, by *parol*, if legally admissible, that the plaintiff refused at the time to sell the said horse to the said *Washburn & Fling* without security, and that it was then agreed that the plaintiff should continue to own the horse until he should receive payment, and that the said *Washburn & Fling*, in the mean time, should not sell said horse. It is also agreed, that one of the said firm drew both of the writings above named. It is also admitted, that the defendant can prove by one of the firm of *Washburn & Fling*, that they sold the same horse to one *Vickory* for a valuable consideration, without giving him any notice of any incumbrance on the horse, or any facts attending the sale to *Washburn & Fling*, and that the said *Vickory* afterwards sold the same to the defendant without giving any notice of any incumbrance; and that *Vickory* was shewn the bill of sale by *Washburn & Fling* at the time of his purchase, and bought on the strength of it. It is admitted, that no part of the sum, which the

said *Washburn & Fling* were to give for said horse had been paid, and that the plaintiff made a demand of the defendant for said horse, as stated in the plaintiff's writ. It is agreed, that if the Court should be of opinion on the above statement, that the plaintiff can recover, that the defendant shall be defaulted for the amount of the notes and interest, and costs; otherwise, the plaintiff shall be non-suited, and the defendant recover his costs.

*E. Brown,* for the plaintiff.

1. The *parol* evidence offered by the plaintiff, was admissible. It is not contradictory to, or inconsistent with, the written papers, and may be admitted to extend the time, to explain the circumstances, and to shew the contract to be conditional. 1 *Comyn on Con.* 40; 3 *Stark. Ev.* 1047; *Houghton* v. *Brown,* 7 *Greenl.* 421; *Nason v. Reed, ibid.* 22; *Fowle* v. *Bigelow,* 10 *Mass. R.* 379. Or to establish an independent fact. *Davenport* v. *Mason,* 15 *Mass. R.* 85.

But it is of little importance, whether this testimony be admissible or not, as the written and *parol* evidence is nearly the same.

2. Upon the facts agreed, the plaintiff has a valid title to the horse. The fair construction of both papers is, that this was but a conditional sale, and that the property never passed from the plaintiff, and was not to pass, until payment should be made. If a man parts with his property, he may annex any condition to it, he pleases. The most favorable ground for the defendant is to consider the transaction a mortgage. As it was agreed, that *Washburn & Fling* should have the possession of the horse until they failed to pay according to agreement, it may be said that this enabled them to commit a fraud. But it has been many times decided, that the possession of mortgaged property by the mortgagor, is no evidence of a legal fraud. *Brooks* v. *Powers,* 15 *Mass R.* 244; *Badlam* v. *Tucker,* 1 *Pick.* 389; *Homes* v. *Crane,* 2 *Pick.* 607; *Wheeler* v. *Train,* 3 *Pick.* 255; *Ward* v. *Sumner,* 5 *Pick.* 59; *Edwards* v. *Harben,* 2 *T. R.* 596; *Marston* v. *Baldwin,* 17 *Mass. R.* 605. Parol evidence is admissible to prove, that a bill of sale, absolute on its face, was intended to be merely a security for money. *Smith* v. *Tilton,* 1 *Fairf.* 350; *Reed* v. *Jewett,* 5 *Greenl.* 96; *Gleason* v. *Drew,* 9 *Greenl.* 79; *Lunt* v. *Whittaker,* 1 *Fairf.* 310.

*J. Appleton,* for defendant, said, that this case ought to be entitled the *negligent seller* against the *vigilant purchaser.* The plaintiff gives a bill of sale of the horse, absolute in its terms, and suffers the horse to go into the possession of the purchaser, who offers it for sale to the defendant. He asks for the title, and is shown a bill of sale from the plaintiff. Finding that the plaintiff once owned the horse, and had transferred his title and possession, he makes the purchase. Afterwards, the plaintiff claims it, as his, and because it is not given up, brings this suit. He ought not to be permitted to recover.

1. Because the giving of this absolute bill of sale for the defendant to show, without any condition, is fully equivalent to standing by and seeing another make sale of his property, and keeping silence; and it is well settled, that this prevents enforcing a claim to it, even in the case of real estate. *Sug. Vend. & Pur.* 480; 4 *Paige,* 94; 1 *Johns. Ch. R.* 354; 2 *Johns. R.* 588; 5 *Johns. Ch. R.* 272; 1 *Story's Eq.* 376, 377, 378; *Roberts on Frauds,* 129.

2. The plaintiff is estopped to claim against his own warranty of freedom from incumbrance, and acknowledgement of payment. *Wells* v. *Higgins,* 1 *Littell,* 300; *Chapman* v. *Searle,* 3 *Pick.* 38; *Divoll* v. *Leadbetter,* 4 *Pick.* 220; *Langford* v. *Foote,* 28 *Com. L. Rep.* 285; *Hawes* v. *Watson,* 2 *B. & C.* 540; *Gosling* v. *Birnee,* 7 *Bing.* 339.

3. When the loss is to fall on one of two persons, he who by his negligence has permitted another to deceive the public, must bear the loss. 6 *Mass. R.* 429; 9 *Mass. R.* 60; 2 *Pick.* 202; 2 *Paige,* 172; 27 *Com. L. Rep.* 461.

4. The paper given back was a mere personal contract, binding only on the parties making it, and cannot create a mortgage against third persons. 7 *B. & Cr.* 481.

After a continuance, *nisi,* the opinion of the Court was drawn up by

WESTON C. J. — The evidence of the contract between the plaintiff and *Washburn & Fling,* is to be found in the paper given by him to them, of the fourth of *January,* 1834, and in that given by them to him of the same date. They both relate to the same transaction, executed at the same time, and are to have the

same effect, as if incorporated in the same instrument. It was not a mode of doing business much to be approved ; but it was sufficient between honest men.    Whatever apparent contradiction there may be in the instruments taken together, it is manifest that the intention of the parties was, that the property should remain in the plaintiff, until he was paid the price.    It was a conditional sale ; a contract for a sale, not consummated.

But if it was to be regarded as a sale, it must be held that there was, at the same time, a mortgage back to secure the consideration. In the one case, the property would not pass, except upon payment ; in the other, it would operate as a re-conveyance to the plaintiff, until he was paid his price.    Both modes of transacting the business, when free from fraud, have been sanctioned by judicial decisions, as appears by the cases cited for the plaintiff.    The mortgage of personal property, the mortgagor remaining in possession, has been resisted as tending to give false credit, and to deceive purchasers ; but their validity has been too firmly established, to be shaken, without the interposition of the legislative power.  And it has been held, in *Lunt et al.* v. *Whittaker,* 1 *Fairf.* 310, that a mortgage of this kind shall prevail against a *bona fide* purchaser, who had no notice of it, or reason to suspect its existence.

Without resorting in this case to the parol evidence, which it is agreed exists, if admissible, we perceive no reason to doubt that the transaction was fair, and free from fraud on the part of the plaintiff.    It does not appear, that he had any reason to suspect, that *Washburn & Fling* would make the fraudulent use they did of the bill of sale he gave them.    It was a fraud upon him, as well as upon the purchaser, bringing into jeopardy the interest of both, and subjecting them to the hazard and expense of a lawsuit.    But it is said the plaintiff ought to lose his horse ; because by his bill of sale, he enabled *Washburn & Fling* to commit a fraud.    This consequence could not have been meditated or designed by him. If he had even suspected it, a regard to his own interest would have withheld him from giving it.    It contributed to enable *Washburn & Fling* to deceive a purchaser ; and purchasers are often deceived by the evidence of property, arising from possession alone, without impairing the title of those, who may have entrusted the fraudulent party with such possession.    As the law now is, the

Lane *v.* Borland.

purchaser of personal property, is always exposed to the incum-
brance of a secret mortgage.   From the bill of sale, the purchaser
had reason to believe, that the former owner of the horse had trans-
ferred his title ; but he would learn from the same paper that it was
not paid for ; and he ought to have known, that he incurred the
hazard of a mortgage, made to secure him or some other person.
If the sale had been made in the plaintiff's presence, and he had
been silent, he could not afterwards have asserted his claim against
the purchaser.

Many cases, some of which have been cited, have turned upon
the principle, that if one of two innocent parties is to suffer loss,
by the fraud of a third, it shall fall upon him, who has reposed
confidence in the fraudulent party, and enabled him to consummate
the fraud.   But this principle cannot apply to every case, which
may fall within its range.   A bailee may sell the property entrusted
to him ; but the purchaser thereby acquires no title against the true
owner.   The mortgagee, by suffering the mortgagor to keep pos-
session, puts it in his power to. defraud a subsequent purchaser, not-
withstanding which, his mortgage is adjudged good.

The plaintiff has proved property in the horse ; either because
he has not parted with his original title, or because he has acquired
a new one by way of mortgage ; and there is no evidence that he
has forfeited it, by fraud or otherwise.   And the defendant having
refused to give up the horse on demand, the opinion of the Court
is, that the plaintiff is entitled to prevail in this action.

*Defendant defaulted.*